UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA FARMER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF CALAVERAS, a Government Entity; HEATHER GORDON, individually and in her official capacity as a Sheriff Deputy for Calaveras County, and DOES 1–50, individually and in their official capacities as peace officers, jointly and severally,<br><br>　　　　　Defendants. | No. 1:18-cv-00009-DAD-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 5) |

This matter is before the court on defendants' motion to dismiss. (Doc. No. 5.) At the March 6, 2018 hearing on the motion attorney Justin Kirk Tabayoyon appeared on behalf of plaintiff and attorney Deborah A. Byron appeared on behalf of defendants. Having considered the parties' briefs and oral arguments and for the reasons set forth below, the court will grant in part and deny in part defendants' motion to dismiss.

**BACKGROUND**

Plaintiff's complaint alleges as follows. On or about August 30, 2015, defendant Officer Heather Gordon was dispatched to plaintiff's residence based on a report that plaintiff may be suicidal. (Doc. No. 1 ("Compl.") at ¶ 11.) Officer Gordon encountered plaintiff sitting in the

1

threshold of the doorway of her home with her mother, Susan Birnbaum. (*Id.*) After confirming plaintiff's identity, Officer Gordon asked plaintiff to accompany her to a mental health facility. (*Id.*) Plaintiff refused, and asked Officer Gordon for an explanation. (*Id.*) Officer Gordon then attempted to take plaintiff into custody by grabbing plaintiff's arm. (*Id.*) Officer Gordon did not release plaintiff's arm, even after plaintiff informed Officer Gordon that plaintiff's arm was injured. (*Id.*) Officer Gordon proceeded to grab one of plaintiff's legs in addition to plaintiff's arm to pull plaintiff down the steps of her home. (*Id.*) Plaintiff's mother, Ms. Birnbaum, told Officer Gordon that plaintiff was disabled and that defendant Gordon was hurting plaintiff. (*Id.*)

Defendant Officer Doe 1 arrived on the scene at some point thereafter. (*Id.* at ¶ 12.) Officer Gordon and/or Doe 1 started to force plaintiff's arms behind her back, despite plaintiff's request to place the handcuffs in front of her body to avoid further injury to her arm. (*Id.*) Officer Gordon and/or Doe 1 then punched plaintiff in the back, causing plaintiff to fall to her knees. (*Id.*) Plaintiff cried and screamed in response to the pain to her arm. (*Id.*) Officer Doe 1 then asked plaintiff if she "would 'behave' as if she were a child." (*Id.*) Officer Doe 1 and/or Officer Gordon then handcuffed plaintiff with her arms in front of her body, and placed her inside their patrol vehicle. (*Id.*)

Due to plaintiff's complaints that she was in excruciating pain, Officer Gordon and/or Officer Doe 1 took plaintiff to the hospital, where plaintiff was x-rayed. (*Id.* at ¶ 13.) Physicians at the hospital reported that plaintiff had preexisting medical conditions, and had just sustained new injuries to her knee, back, neck, and arm. (*Id.*)

Upon leaving the hospital, Officer Gordon and/or Doe 1 transported plaintiff to Calaveras County Jail, where plaintiff was booked for public drunkenness and resisting arrest. (*Id.*) While incarcerated, plaintiff continued to suffer pain from the injuries inflicted by defendants, but her requests to be examined by a nurse at the jail were denied. (*Id.*) Plaintiff was seen by mental health personnel, who completed documents with plaintiff and advised plaintiff that a counselor would call her. (*Id.*) After sixteen hours in custody, plaintiff was released. (*Id.*)

Plaintiff initiated this action on August 27, 2017, alleging violation of her constitutional rights under § 1983 and related state law claims. On November 20, 2017, defendants filed a

motion to dismiss certain causes of action alleged in the complaint. (Doc. No. 5.) Plaintiff filed her opposition to the motion to dismiss on December 28, 2017. (Doc. No. 8.) On December 29, 2017, the parties stipulated to transfer of venue, as the action was mistakenly initiated in the Sacramento Division of this court. (Doc. No. 11.) Venue was thereafter transferred to the Fresno Division on January 2, 2018. (Doc. No. 12.) Defendants filed their reply in support of the motion to dismiss on January 4, 2018. (Doc. No. 15.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In ruling on such a motion, the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if

3

their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## ANALYSIS

Defendants advance the following arguments in moving to dismiss certain causes of action alleged in plaintiff's complaint: (1) Officer Gordon and Does 1–25 cannot be held liable as to plaintiff's Fourth Amendment claim under 42 U.S.C. § 1983 because defendants are entitled to qualified immunity; (2) Does 26–50 cannot be held vicariously liable as to any of plaintiff's constitutional claims because 42 U.S.C. § 1983 does not allow for *respondeat superior* liability; (3) plaintiff fails to state a claim under California's Ralph Act, Civil Code § 51.7; (4) plaintiff fails to state a claim for intentional infliction of emotional distress; (5) plaintiff fails to state a claim under the Americans with Disabilities Act; and (6) plaintiff fails to allege sufficient facts to support a claim for punitive damages. The court will address each of these arguments in turn below.

**A.     Fourth Amendment Claim under 42 U.S.C. § 1983**

Plaintiff's first cause of action is against Officer Gordon and Does 1–25 for arresting plaintiff without probable cause, and using excessive force while doing so, in violation of 42 U.S.C. § 1983. (Compl. at ¶¶ 20–26.) Defendants argue that dismissal of this first cause of action is warranted because Officer Gordon is entitled to qualified immunity. (Doc. No. 5-1 at 3.)

Evaluating a claim of qualified immunity involves two inquiries: "(1) whether the defendant violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). Courts have discretion to choose the order in which to answer these questions. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiff bears the burden under § 1983 to prove that Officer Gordon's conduct violated a clearly established constitutional right. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Whether a right is "clearly established" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1056 (9th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also Thompson v. Rahr*, 885 F.3d 582, 587 (9th Cir. 2018).

4

According to plaintiff, Officer Gordon violated plaintiff's constitutional rights by seizing and arresting her without probable cause and using excessive force in effecting that arrest. (Doc. No. 9 at 3–4.) Defendants contend that a reasonable law enforcement officer, called to the scene of a potentially suicidal person, could reasonably believe that taking that person into custody upon refusal of medical intervention would be lawful, even if by physical force. (Doc. No. 5-1 at 4.)

Viewing the facts as alleged in the complaint in the light most favorable to plaintiff, the only articulable fact available to Officer Gordon that indicated that plaintiff might be suicidal was an initial report that did not provide further detail or corroboration. Plaintiff alleges that once Officer Gordon arrived at plaintiff's residence, Officer Gordon encountered plaintiff sitting on the steps outside her home with her mother, "calmly conversing." (Compl. at ¶ 11.) Upon confirming plaintiff's identity, Officer Gordon "immediately" asked plaintiff to accompany her to a mental health facility. (*Id.*) Encountering resistance from plaintiff, Officer Gordon then used physical force to pull plaintiff down the steps of her home and forcibly placed handcuffs on plaintiff. (*Id.* at ¶¶ 11–12.)

Accepting these facts as true, defendants ask this court to dismiss plaintiff's § 1983 claim against Officer Gordon on the grounds that Officer Gordon could have reasonably believed that the use of force in effecting plaintiff's arrest was not violative of plaintiff's constitutional rights. The court cannot, however, make this determination without a fully developed factual record, particularly where plaintiff has alleged facts suggesting that her arrest was made without probable cause. Probable cause exists when "officers have knowledge or reasonably trustworthy information to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). While "conclusive evidence of guilt" is not necessary, "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough." *Id.* As alleged in the complaint, Officer Gordon sought to arrest plaintiff based merely on a report that plaintiff was potentially suicidal, with no other reason to believe that was the case. The court concludes plaintiff has plausibly alleged a constitutional violation.

5

Because plaintiff can plausibly allege that Officer Gordon's actions were in violation of plaintiff's constitutional rights, the next inquiry for the court is whether that right was clearly established at the time of the alleged violation. *Isayeva*, 872 F.3d at 945. Neither party has referred the court to any legal authority regarding whether plaintiff's rights were clearly established in this specific context. Nonetheless, the court finds that plaintiff has alleged a clearly established right to be free from detention without probable cause, where such probable cause appears to consist solely of an unsubstantiated report. *See Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991) ("Although there are few decisions that discuss the fourth amendment standard in the context of seizure of the mentally ill, all have recognized the proposition that such a seizure is analogous to a criminal arrest and must therefore be supported by probable cause."); *see also United States v. Mendonsa*, 989 F.2d 366, 368 (9th Cir. 1993) ("An anonymous tip, without more, does not constitute probable cause.") (citing *Illinois v. Gates*, 462 U.S. 213, 227 (1983)).

Accepting the factual allegations of plaintiff's complaint to be true, as this court must, it is sufficient to state cognizable claims for an unlawful arrest in violation of the Fourth Amendment and excessive use of force. Accordingly, the court finds that defendants are not entitled to dismissal on qualified immunity grounds.

**B.     Supervisory Liability under 42 U.S.C. § 1983**

Plaintiff's third cause of action alleges supervisory liability under § 1983 for deliberate indifference to the need for further training, supervision, and/or discipline of Officer Gordon and Doe defendants 1–25. Defendants move to dismiss this cause of action on the grounds that there is no *respondeat superior* liability under § 1983. (Doc. No. 5 at 4–5.) Plaintiff did not respond to this motion in her opposition, instead appearing to conflate the pleading standards for supervisory liability and municipal liability. (Doc. No. 8 at 4–5.)

A claim against a supervisory official in his or her individual capacity requires that plaintiff plead that each defendant, through the official's own individual actions, has violated the Constitution. *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011). Here, plaintiff's complaint does not identify any individual supervisory defendant by name or position, nor does plaintiff plead facts demonstrating specific actionable conduct on the part of any defendant. Conclusory

allegations of failure to train, supervise, or discipline, without more, are insufficient to state a viable claim under this theory. *See Preschooler II v. Clark Cty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1182–83 (9th Cir. 2007) (holding that the details of the individuals' alleged misconduct, the role of the officials, the knowledge and reporting duties of the officials, and their failure to take corrective action was required to state a claim under the Ninth Circuit's "limited supervisory liability doctrine"). Therefore, the court will dismiss this cause of action.

**C.    Ralph Act**

The Ralph Act, codified at Civil Code § 51.7, protects a person's right to be free from violence or intimidation on account of "their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status." Cal. Civil Code §§ 51(b), (e); 51.7. A cause of action under this section requires plaintiff to allege: (1) defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of a protected characteristic; (3) plaintiff was harmed; and (4) defendant's conduct was a substantial factor in causing plaintiff's harm. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880–81 (2007). Defendants contend that plaintiff's fifth cause of action under the Ralph Act fails to state a claim because the allegations are insufficient to establish prong two outlined above—that Officer Gordon's conduct was motivated by a perception of any disability of plaintiff. (Doc. No. 5 at 5.)

Plaintiff alleges that defendants committed violent acts against her "because of her disability and/or psychiatric condition." (Compl. at ¶ 55.) California Civil Code § 51(e) defines "mental disability" consistent with California Government Code § 12926, which identifies, in relevant part, a mental disability as "having any mental or psychological disorder or condition . . . that limits a major life activity." Cal. Gov. Code § 12926(j)(1). In her opposition to defendants' motion to dismiss plaintiff indicates that her Ralph Act claim is premised on her mental disability of "being suicidal," which plaintiff contends "limits the most major life activity there is: living itself." (Doc. No. 8 at 5.)

/////

7

1    Defendants argue that permitting such a claim to proceed would imply that any time a law
2 enforcement officer is summoned to deal with a non-compliant, possibly suicidal individual, a
3 subsequent arrest of that individual must have been motivated by mental disability discrimination.
4 (Doc. No. 15 at 4.) The court disagrees. An officer may detain any person the officer determines,
5 "as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled,"
6 pursuant to § 5150 of the California Welfare and Institutions Code, where such detention is based
7 on probable cause. *Bias v. Moynihan*, 508 F.3d 1212, 1220 (9th Cir. 2007). When the authority
8 for such detention is exercised *in accordance with the law*, law enforcement officers are immune
9 from liability. Cal. Welf. & Inst. Code § 5278; *see also Bias*, 508 F.3d at 1221–22 (holding that a
10 plaintiff's state law claims, including a claim under § 51.7 for racial discrimination, were barred
11 by § 5278, which precludes liability on the part of any individual authorized to detain a person
12 under § 5150, where the officer had probable cause to do so); *Dorger v. City of Napa*, No. 12-cv-
13 00440-WHO, 2013 WL 5804544 (N.D. Cal. Oct. 24, 2013) ("On its face, immunity [under §
14 5278] only applies if the detention was in accordance with the law.").

15   In contrast, here, plaintiff alleges that Officer Gordon's conduct can be attributed to
16 mental disability discrimination because plaintiff's arrest was *not carried out* in accordance with
17 the law. Plaintiff alleges that at the time of her arrest, the only information available to Officer
18 Gordon was a report indicating that plaintiff may be suicidal. (Compl. at ¶ 11.) Plaintiff alleges
19 that when Officer Gordon approached plaintiff, Officer Gordon had "no reason to do anything
20 other than speak with Farmer regarding the report she may be suicidal." (*Id.*) However, "[r]ather
21 the [sic] investigate the report to corroborate it, Gordon immediately asked Farmer go [sic] to a
22 mental health facility with her." (*Id.*) As alleged in the complaint, the only basis upon which
23 Officer Gordon chose to forcefully take plaintiff into custody was because Officer Gordon
24 perceived plaintiff to be suicidal. Plaintiff alleges that she was merely sitting on the front steps of
25 her home, "calmly conversing" with her mother. (*Id.*) The court finds that plaintiff's complaint
26 alleges sufficient facts to state a cognizable claim under the Ralph Act.
27 /////
28 /////

8

## D. Intentional Infliction of Emotional Distress

Plaintiff's seventh cause of action is for intentional infliction of emotional distress ("IIED"). Defendants contend that plaintiff fails to state a claim for IIED because the alleged conduct is not sufficiently outrageous. (Doc. No. 5 at 6–7.) Under California law, a claim for IIED requires a plaintiff to establish "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991). Conduct actionable as IIED must be so outrageous as to "exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009). While the court may, in certain instances, conclude the specific conduct alleged is insufficiently outrageous to sustain such a claim as a matter of law, *see Davidson v. City of Westminster*, 32 Cal. 3d 197, 210 (1982), this element of the claim is commonly seen as a factual issue. *See Yun Hee So v. Sook Ja Shin,* 212 Cal. App. 4th 652, 672 (2013) ("Thus, whether conduct is 'outrageous' is usually a question of fact."); *Ragland v. U.S. Bank Nat'l Ass'n*, 209 Cal. App. 4th 182, 204 (2012) ("Whether conduct is outrageous is usually a question of fact."); *Spinks v. Equity Residential Briarwood Apts.*, 171 Cal. App. 4th 1004, 1045 (2009) ("In the usual case, outrageousness is a question of fact."); *Hawkins v. Bank of Am. N.A.*, No. 2:16-cv-00827-MCE-CKD, 2017 WL 590253, at *5 (E.D. Cal. Feb. 14, 2017).

Here, plaintiff has plausibly alleged that Officer Gordon took plaintiff into custody without probable cause and in carrying out that arrest employed excessive force. Plaintiff also alleges that in taking these actions, defendant disregarded plaintiff's pleas that she was in pain, and caused plaintiff to sustain new injuries to her knee, back, neck, and arm. Taking the facts alleged as true, a reasonable jury could find the actions of defendants to be outrageous and outside the bounds of what is usually tolerated by civilized society. *Hughes*, 46 Cal. 4th at 1050–51. Defendants have not provided any authority to the contrary. Therefore, the court will deny defendants' motion to dismiss the IIED cause of action.

/////

### E. Americans with Disabilities Act

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A cause of action under Title II of the ADA has four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). In addition, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

The Ninth Circuit has found that Title II applies to arrests. *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds, cert. dismissed in part sub nom. City & Cty. of San Francisco v. Sheehan*, ___U.S.___, 135 S. Ct. 1765 (2015). Courts have recognized a Title II claim in the context of an arrest where police "fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.*

Plaintiff's ninth cause of action brought under the ADA alleges that Officer Gordon "failed to reasonably accommodate [plaintiff's] disability in the course of contacting and seizing her, causing her to suffer greater injury in the process than other detainees or arrestees." (Compl. at ¶ 95.) Defendants move to dismiss this cause of action on two grounds: first, disability must be pled with factual specificity, which plaintiff failed to do; and second, plaintiff did not plead sufficient facts to show that Officer Gordon knew that plaintiff was disabled, and Officer Gordon

therefore could not have acted on the basis of that disability. (Doc. No. 5 at 7–8.)

Defendants are correct that, with respect to her ADA claim, plaintiff has failed to plead disability with factual specificity. *See Bresaz v. County of Santa Clara*, 136 F. Supp. 3d 1125, 1135–36 (N.D. Cal. 2015) ("[W]here . . . a party alleges that he or she is disabled under the ADA, courts have generally required the party to plead the disability with some factual specificity."). Here, the complaint specifies only that plaintiff has a "mental illness, disability and medical impairments that limited and/or substantially limited her ability to care for herself and control her mental, medical, or physical health condition as defined under the ADA." (Compl. at ¶ 88.) Other parts of the complaint allude to physical disability in plaintiff's arm, but only insofar as plaintiff told Officer Gordon that her arm was "injured," and plaintiff's mother told Officer Gordon that plaintiff "is disabled." (Compl. at ¶ 11.) These allegations are conclusory in nature.

Moreover, other than its allegations that plaintiff requested that she be handcuffed with her arms in front of her, her complaint does not specify what reasonable accommodation defendants failed to make with respect to plaintiff's disability in the course of her arrest. *See Edd v. County of Placer*, No. 2:14-cv-02739-JAM-AC, 2015 WL 1747394 (E.D. Cal. Apr. 16, 2015) (dismissing certain ADA claims because "the complaint does not explain how the [post-arrest condition complained of] was related to his disability or how it could have been ameliorated by an accommodation related to that disability"); *Anaya v. Marin Cty. Sheriff*, No. 13-cv-04090-WHO, 2014 WL 6660415, at *11 (N.D. Cal. Nov. 24, 2014) (dismissing ADA claims because complaint did not "explain how [plaintiff's] disability created physical limitations or symptoms at the time of her arrest and transportation so that she needed specifically identified reasonable accommodations"). Accordingly, plaintiff's ADA cause of action will be dismissed.

**F.     Punitive Damages**

Lastly, defendants argue that plaintiff has failed to allege sufficient facts to support an award of punitive damages, because her allegation of excessive force "[is] not necessarily enough to meet requisite standards for malicious, oppressive or reckless conduct which deters further misconduct." (Doc. No. 5 at 8.) Punitive damages are available for actions under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

11

reckless or callous indifference to the federally protected rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). California law generally authorizes the award of punitive damages when it can be shown "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). California courts have generally construed this language to mean "intent to injure or willful and conscious disregard of others' rights." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000).

Assuming all of the facts alleged in plaintiff's complaint are true, the court cannot conclude that, as a matter of law, plaintiff would be unable to show that Officer Gordon exhibited either a "reckless or callous indifference" or a "willful and conscious disregard" of plaintiff's rights. As noted above, the complaint alleges that Officer Gordon used force to take plaintiff into custody, and continued to use such force despite statements from plaintiff and plaintiff's mother that plaintiff was in pain and had a pre-existing arm injury. (Compl. at ¶ 11.) When Officer Gordon produced handcuffs, plaintiff requested that she be handcuffed with her arms in front of her body to avoid injuring her arm further. (*Id.* at ¶ 12.) Plaintiff alleges that Officer Gordon and/or Officer Doe 1 then punched plaintiff in the back, causing her to fall to her knees, and only handcuffed plaintiff with her arms in front of her body after plaintiff cried and screamed in pain. (*Id.*) It is alleged by plaintiff that, thereafter, defendants took her to a hospital, where physicians diagnosed new injuries to plaintiff's knee, back, neck, and arm. (*Id.* at ¶ 13.) In light of these allegations, plaintiff's punitive damages claim survives defendants' motion to dismiss.

### G. Leave to Amend

For the reasons explained above, defendants' motion to dismiss is denied, except as to plaintiff's third cause of action for supervisory liability under § 1983 and plaintiff's ninth cause of action under the ADA. As to those two claims, defendant's motion is granted. The court has carefully considered whether plaintiff may amend her complaint to state supervisory liability and ADA claims upon which relief can be granted. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." *California Architectural Bldg. Prod. v. Franciscan*

*Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1988); *see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

At this early stage of the litigation, the court cannot conclude that the granting of leave to amend would be futile. Accordingly, plaintiff will be granted an opportunity to amend her complaint as to the third and ninth causes of action in order to attempt to cure the deficiencies noted in this order.

## CONCLUSION

For the reasons set forth above:

1. Defendants' motion to dismiss (Doc. No. 5) is granted as to plaintiff's third cause of action for supervisory liability under 42 U.S.C. § 1983 and plaintiff's ninth cause of action under the Americans with Disabilities Act and Rehabilitation Act, with leave to amend;
2. Defendants' motion to dismiss (Doc. No. 5) is denied in all other respects; and
3. If plaintiff wishes to amend her complaint to attempt to cure any of the deficiencies identified in this order, she is directed to file with the court an amended complaint no later than twenty-one days from the issuance of this order.

IT IS SO ORDERED.

Dated: **April 23, 2018**

UNITED STATES DISTRICT JUDGE